**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**PRISTAL ALEXANDER PETRO and**
**GERALD WEATHERSBY,**

                   **Plaintiffs,**
    v.                                                 3:04-CV-928

**OUTBACK STEAKHOUSE of FLORIDA and**
**DEBRA CLEVELAND,**

                   **Defendants.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

## DECISION & ORDER

### I. INTRODUCTION

Plaintiffs Pristal Alexander Petro ("Petro") and Gerald Weathersby ("Weathersby"), both black males, commenced this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") and the New York State Human Rights Law, N.Y. Exec. Law § 296, *et seq.* ("NYSHRL"). Both allege hostile work environment discrimination occurring at their place of employment at the Outback Steakhouse in Vestal, New York. Defendants have moved for summary judgment pursuant Fed. R. Civ. P. 56 seeking to dismiss the entire action. For the reasons that follow, that motion is granted and the action is dismissed.

### II. BACKGROUND

In support of the motion, Defendants have filed a properly supported "Statement of Material Facts Not in Dispute" as required by the Northern District of New York's Local Rule 7.1(a)(3)

("Defs. L.R. 7.1 Stat."). See N.D.N.Y.L.R. 7.1(a)(3). Plaintiffs, who are represented by counsel, have failed to file any responsive Statement of Material Facts as required by the Local Rules. See id..[1] The Court declines to sift through the factual materials that Plaintiffs have submitted in an effort to find factual support for their arguments. See Amnesty America v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002)("We agree with those circuits that have held that FED. R. CIV. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.")(citations omitted); Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 291 (2d Cir. 2000)(The Court's Local Rules require the parties "to clarify the elements of the substantive law which remain at issue because they turn on contested facts" and the Court "is not required to consider what the parties fail to point out.")(internal quotation marks and citations omitted). Rather, the Court deems the properly supported allegations in Defendants' L.R. 7.1 Statement admitted for purposes of this motion. See N.Y. Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc., 426 F.3d 640, 648-49 (2d Cir.

---

[1] Specifically, the Local Rule 7.1(a)(3) require a party moving for summary judgment to submit a "Statement of Material Facts" which

> shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits. It does not, however, include attorney's affidavits.

N.D.N.Y.L.R. 7.1(a)(3). Once such a statement is submitted, the party opposing summary judgment

> shall file a response to the [movant's] Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute in separately numbered paragraphs. <u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party</u>.

Id. (emphasis in original).

2005)(upholding grant of summary judgment where "[t]he district court, applying Rule 7.1(a)(3) strictly, reasonably deemed [movant's] statement of facts to be admitted" because the non-movant submitting a responsive Rule 7.1(a)(3) statement that "offered mostly conclusory denials of [movant's] factual assertions and failed to include any record citations."); Gubitosi v. Kapica, 154 F.3d 30, 31 n. 1 (2d Cir. 1998)(per curiam)(accepting as true material facts contained in unopposed local rule statement of material facts); Meaney v. CHS Acquisition Corp., 103 F. Supp.2d 104, 108 (N.D.N.Y. 2000)(deeming movant's Rule 7.1(a)(3) Statement admitted where non-movant's response "set forth *no* citations – specific or otherwise – to the record")(emphasis in original); McKnight v. Dormitory Auth. of State of N.Y., 189 F.R.D. 225, 227 (N.D.N.Y. 1999)(McAvoy, J.)("deem[ing] the portions of Defendants' 7.1(a)(3) statement that are not specifically controverted by Plaintiff to be admitted"); Osier v. Broome County, 47 F. Supp.2d 311, 317 (N.D.N.Y. 1999) (McAvoy, J.)(deeming admitted all facts in defendants' Rule 7.1(a)(3) statement where "plaintiff submitted thirteen pages of purported facts without any indication where those facts can be located in the record"). Inasmuch as all of the allegations in Defendants' L.R. 7.1 Statement are properly supported with record citations, Defendants' L.R. 7.1 Statement is adopted in its entirety. Familiarity with the contents of Defendants' L.R. 7.1 Statement is presumed, and the Court will repeat only those facts that are pertinent to the instant Decision and Order.

### III. STANDARD FOR SUMMARY JUDGMENT

The Court will apply the well-settled standard for deciding summary judgment motions in discrimination actions. See FED. R. CIV. P. 56(c); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000); Bracci v. N.Y.S. Dept. of Correctional Services,

2005 WL 2437029, at * 1 (N.D.N.Y. Sept. 30, 2005)(McAvoy, S.J.). Even though the facts are uncontested, the Court nonetheless construes them in the light most favorable to Plaintiffs, and resolves all ambiguities and draws all reasonable factual inferences in Plaintiffs' favor. Michalski v. The Home Depot, Inc., 225 F.3d 113, 115 (2d Cir. 2000).

## IV. DISCUSSION

### A. Hostile Work Environment Claims

Title VII makes it unlawful for employers to discriminate against individuals based on race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). This prohibits "requiring people to work in a discriminatorily hostile or abusive environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993); see Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)("Title VII affords employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult."). In order to state a viable hostile environment claim under Title VII, a plaintiff must establish that (1) the harassment was so severe as to alter the terms and conditions of his employment, and (2) there is a basis for imputing the harassing conduct to the employer. Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998).

Assuming, *arguendo*, that both Plaintiffs present viable hostile work environment claims (based upon their race, their gender, or both), the Defendants contend that they are entitled to summary judgment dismissing these claims based upon the Faragher/Ellerth affirmative defense. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807 (1998). The Court agrees.

Under Title VII, there is a presumption that an employer is vicariously liable for a hostile work environment created by a supervisor of a victimized employee. See Ellerth, 524 U.S. at 765.

There is no dispute that the alleged harasser, Defendant Debra Cleveland, was Plaintiffs' supervisor for purposes of imputing liability to the employer. See Mack v. Otis Elevator Co., 326 F.3d 116, 126 (2d Cir. 2003). Thus, there is a presumption of vicarious liability.  In such circumstances, an employer is entitled to raise the Faragher/Ellerth affirmative defense only if no tangible employment action was taken against the victimized employee.

Here, there is no evidence that either plaintiff was subjected to a tangible employment action.  Mr. Weathersby resigned his job on July 16, 2003 because Ms. Cleveland told him and the kitchen manger that they were not cooking steaks fast enough. See Defs. 7.1 Stat., ¶¶ 104-107. While a constructive discharge is a tangible employment action, see Pennsylvania State Police v. Suders, 124 S.Ct. 2342, 2351 (2004),[2] Mr. Weathersby provides no evidence from which a fair minded jury could conclude that during the three and one-half weeks he worked at the Outback Steakhouse the employer acted intentionally to make his work conditions intolerable, or that the conditions of his employment were objectively intolerable. See Defs. 7.1 Stat., ¶¶. 96-98, 104-107, 120-135.  Thus, he has no claim for constructive discharge. See Suders, 124 S.Ct. at 2355 ("A plaintiff who advances [a hostile-environment constructive discharge claim] must show working conditions so intolerable that a reasonable person would have felt compelled to resign."); Petrosino v. Bell Atlantic, 385 F.3d 210, 229-30 (2d Cir. 2004)(A claim for constructive discharge has two parts: "the employer's intentional conduct and the intolerable level of the work conditions." The second part "is assessed objectively by reference to a reasonable person in the employee's

---

[2] In Suders, the Supreme Court "granted certiorari ... to resolve the disagreement among the Circuits on the question whether a constructive discharge brought about by supervisor harassment ranks as a tangible employment action and therefore precludes assertion of the affirmative defense articulated in Ellerth and Faragher." Suders, 124 S.Ct. at 2350-51.  The Supreme Court concluded that "an employer does not have recourse to the Ellerth/Faragher affirmative defense when a supervisor's official act precipitates the constructive discharge; absent such a 'tangible employment action,' however, the defense is available to the employer whose supervisors are charged with harassment." Id. at 2351.

5

position."); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987)("A constructive discharge occurs when the employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."); Kader v. Paper Software, Inc., 111 F.3d 337, 341 (2d Cir. 1997)(A prerequisite to a finding of constructive discharge is proof that the "employer deliberately created working conditions" which effectively forced the employee to resign.); see also Stetson v. NYNEX Serv. Co. and NYNEX Corp., 995 F.2d 355 (2d Cir. 1993)(It is not sufficient, in attempting to establish constructive discharge, that the employee feels that the quality of his work had been unfairly criticized).

Mr. Petro had no change in the terms or conditions of his job and, in fact, was still employed by the Outback Steakhouse at the time he filed his claim of discrimination with the New York State Division of Human Rights. See Defs. 7.1 Stat., ¶ 66.[3]

Turning next to the Faragher/Ellerth affirmative defense, the defense comprises two necessary elements:

> (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

Ellerth, 524 U.S. at 765. The employer bears the burden of persuasion on both elements. Ellerth, 524 U.S. at 765.

The uncontroverted evidence in this case establishes both elements in the employer's favor as to both Plaintiffs. In this regard, the uncontested facts reveal:

1. Outback Steakhouse has a uniform harassment and discrimination policy that

---

[3] Mr. Petro was eventually fired for brandishing a knife at a co-worker months after he filed a claim with the Division of Human Rights. Defs. 7.1 Stat., ¶ 67.

applies to all of its restaurants (Kadow Affidavit ¶ 9).

2. That policy sets forth a complaint procedure to be followed by employees who believe they have been subjected to discrimination, harassment or retaliation in violation of that policy (Id. Ex. "A", 9);

3. The discrimination/harassment policy explains that employees can lodge such complaints with the General Manger, the Joint Venture Partner, the Service Tech (a regional trainer for food service), the Director of Employee Relations, (who works at the corporate offices), and Outback Steakhouse Inc.'s General Counsel (Id. Ex. "A", 9);

4. In instances where an employee wants to complain that a General Manager has engaged in harassment, discrimination or retaliation in violation of the harassment and discrimination policy, that employee has several layers of personnel above the General Manager to whom he or she can complain (Id. Ex. "A", 9);

5. At the time(s) of their hiring, both Mr. Petro and Mr. Weathersby were provided and signed for information about Outback's Sexual Harassment and Equal Employment Opportunity policies (Weathersby Dep. Tr. p. 33, Petro Dep. Tr. pp. 23-24);

6. Both Mr. Petro and Mr. Weathersby were provided with Outback Steakhouse's Employee Handbook called "The Outbacker" and signed a statement that they had received it (Exhibit "E", "H" to Guy Affidavit; Kadow Affidavit, Ex. "A");

7. Both were provided with their personnel folders to review, fill out and sign (Petro T. pp. 23-24; Weathersby T. p. 33);

8. In addition to information about such things as paid vacation and overtime compensation, the personnel folders are printed in a prominent place with Outback's Sexual Harassment Policy and the Equal Employment Opportunity Policy (Guy Affidavit Ex. E);

9. Mr. Petro signed and dated both the Sexual Harassment Policy and the Equal Employment Opportunity Policy on November 27, 2001 (Petro T. pp. 23-24; Guy Affidavit, Ex. "E");

10. On June 17, 2002 and June 22, 2003, Mr. Weathersby signed the policies and acknowledged receiving "The Outbacker" Handbook (Guy Affidavit, Exhibit "H");

11. Mr. Petro conceded he knew what those policies were, read the bold print and was able to tell what the policies were for. (Petro T. p. 31);

12. Mr. Weathersby confirmed that he read the policies prior to signing on both occasions, that he understood what he read (Weathersby T. pp. 35, 81), and did not have any questions (Weathersby T. p. 82);

 13. These two policies, as well as a number of others, are also contained on the Aussie Info Poster provided by the Company, which was posted at the Vestal Store (Cleveland T. p. 12);

 14. This poster and the handbook provide the titles, names and telephone numbers of the individuals to whom an employee could report a claim of discrimination or harassment (Kadow Affidavit Exhibit "A", 9, Cleveland T. pp. 10-12);

 15. Both the poster and the handbook state that the employee should contact any of the individuals listed "with whom you would be most comfortable speaking." (Kadow Affidavit Exhibit "A" 9, Cleveland T. pp. 10-12).

 These facts establish, without contradiction, that the employer had an anti-harassment policy with a complaint procedure in place, Leopold v. Baccarat, Inc., 239 F.3d 243, 245 (2d Cir. 2001)("Although not necessarily dispositive, the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense."), and that both Plaintiffs were aware of the policy and the procedure for making a complaint.

 Further, the uncontested facts reveal that neither plaintiff took advantage of the policy and complaint procedure. Defs. L.R. 7.1 Stat. ¶¶ 80, 109. Mr. Weathersby's only excuse for this was that he was trying "not to cause any - - -any major commotion about it or conflict, because being that [Ms. Cleveland] is the top person in the restaurant ... I didn't want to do anything to put myself in a compromising position." (Weathersby T. p. 88). Although he met Ms. Cleveland's boss, David Shanks, Mr. Weathersby did not complain to him because he "didn't know how hard or how easy it is to get ahold of him." (Weathersby T. pp. 89-90). However, unsubstantiated subjective fear of retaliation does not excuse a failure to report alleged harassment. See Leopold v. Baccarat, 239 F.3d 243, 246 (2d Cir. 2001)("A credible fear must be based on more than the employee's subjective belief. Evidence must be produced to the effect that the employer has ignored or resisted similar

8

complaints or has taken adverse actions against employees in response to such complaints * * *. [Plaintiff] did not come forward with any such evidence, but instead simply asserted her apprehension that she would be fired for speaking up, and claimed generally that a co-worker's vague and ambiguous complaint was not taken seriously."); Samborski v. West Valley Nuclear Servs., Co., 2002 WL 1477610, at *6 (W.D.N.Y.2002) (holding that an employee's "unsubstantiated subjective fear of retaliation cannot excuse her failure to report other incidents of alleged harassment"). Thus, Mr. Weathersby's failure to report the purported harassment is not excused.

Similarly, the uncontested facts reveal that Mr. Petro failed to follow the complaint procedure. While he did voice some vague discontent to Assistant Kitchen Manager Jessie Blackwolf,[4] Mr. Blackwolf was not on the list of individuals authorized to accept such complaints. Defs. L.R. 7.1 Stat., ¶¶ 75-77. Further, and more importantly, Mr. Blackwolf passed along Petro's complaints to Ms. Cleveland but when Ms. Cleveland spoke with Petro about it, he said that he did not really think he was discriminated against and withdrew his complaint. Id. ¶ 79. He made no further complaint.

The failure of Mr. Weathersby and Mr. Petro to properly report the alleged harassment unreasonably deprived the employer of the opportunity to investigate their complaints and, if necessary, undertake remedial action. Therefore, the employer is entitled to judgment on the harassment claims based upon the Faragher/Ellerth affirmative defense.

### B. New York State Claims

All federal claims having been dismissed, the Court declines to exercise its discretion to

---

[4] Mr. Petro testified that he told Mr. Blackwolf: "I'm very uncomfortable ... every time something happens in the restaurant she's ... blaming me" and "she's putting her hands on me and saying racial comments ...." Defs. L.R. 7.1 Stat., ¶ 75 (citing Petro T. p. 102).

9

maintain jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c)(3); Purgess v. Sharrock, 33 F.3d 134, 138-39 (2d Cir. 1994). Therefore, Plaintiffs' state law claims are dismissed without prejudice to refiling in state court.

## VI. CONCLUSION

For the reasons discussed above, the Defendants' motion for summary judgment is **GRANTED**, and all federal claims are **DISMISSED WITH PREJUDICE**. The Court declines to exercise jurisdiction over the supplemental state law claims, and all state law claims are **DISMISSED WITHOUT PREJUDICE TO REFILING IN STATE COURT.**

IT IS SO ORDERED

DATED:January 31,2006

*Thomas J. McAvoy* (signature)
Thomas J. McAvoy
Senior, U.S. District Judge